

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-15-489

|  |  |
|---|---|
| THOMAS JOHN KENNEDY OF ARKANSAS, DDS, PC d/b/a DENTURES AND DENTAL SERVICES; DR. RICKY PERRY<br>APPELLANTS | **OPINION DELIVERED** FEBRUARY 3, 2016<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT, [NO. 63CV-11-780] |
| V. | HONORABLE GRISHAM PHILLIPS, JUDGE |
| BARBARA AUSBROOKS<br>APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellants Thomas John Kennedy of Arkansas, DDS, PC, d/b/a Dentures and Dental Services, and Dr. Ricky Perry appeal the order of the Saline County Circuit Court granting appellee's motion for a new trial. We affirm.

### I. *Facts*

This appeal originated in 2011 when appellee Barbara Ausbrooks filed a malpractice lawsuit under the Arkansas Medical Malpractice Act (the "AMMA") against appellants arising out of dental care and treatment she received from Dr. Perry in 2010 and 2011.

The four-day jury trial began on September 22, 2014. During the trial, appellee presented evidence from two expert witnesses in the dental field, as well as another third-party treating dentist and several lay witnesses. Appellants presented testimony from Dr. Perry; a dental-expert witness, Dr. Richard Hixson; a treating dentist; a treating physician; and an employee of the dental clinic.

Shortly before the trial, appellee filed a motion in limine in which she argued that the testimony of appellant's expert, Dr. Hixson, should be excluded. Dr. Hixson testified in his deposition that appellants "probably" fell within the standard of care, but he said he did not know what the standard was; accordingly, his definition was inconsistent and therefore inadmissible. Dr. Hixson's deposition revealed, at best, that his "idea" of a standard of care was a subjective standard. He testified that if there is no dental proclamation from the dental board, then there is no standard of care in Arkansas. The circuit court denied appellee's motion in limine.

At trial, Dr. Hixson's testimony on direct examination was cursory, and on cross-examination, he was confrontational with appellee's counsel and engaged in long narratives. Appellee's counsel requested that the jury be excused, and the circuit court attempted to correct Dr. Hixson's behavior. When the jury returned to the courtroom, Dr. Hixson ignored the circuit court's previous order. The circuit court stopped the proceedings a second time, excused the jury again, and indicated its displeasure with Dr. Hixson's behavior.

On September 25, 2014, after hearing all the evidence introduced by the parties, the instructions of the court, and the arguments of counsel, the jury returned a unanimous verdict in favor of appellants. On September 29, 2014, appellee filed a motion for new trial based on numerous grounds, including the contention that testimony from Dr. Hixson "appealed to the jury's prejudice" and "foreclosed other areas of cross examination." In support of her request for a new trial, appellee further cited "multiple irregularities and

surprises," including a record that reflected the fact that Dr. Hixson's testimony "changed at trial."

A full hearing was held on appellee's motion on November 6, 2014. After argument from both parties, the circuit court found that Dr. Hixson's answers to questions on cross-examination were "over broad, over the line." The circuit court further concluded that "Dr. Hixson essentially accused [appellee's trial counsel] of being dishonest, of trying to trick the jury, of trying to fool the jury, and trying to make the jury feel foolish." Although the circuit court did not specifically articulate how its interpretation of Dr. Hixson's testimony impacted the jury's decision or affected appellee's rights at trial, on November 6, 2014, the circuit court granted appellee's motion for new trial. Appellants filed a notice of appeal on December 2, 2014, from the order granting appellee a new trial.

## II. *Standard of Review*

This court will not reverse an order granting a new trial unless there has been a manifest abuse of discretion. *See Smith v. Hopper*, 2015 Ark. 210, 462 S.W.3d 335. Manifest abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *English v. Robbins*, 2014 Ark. 511, 452 S.W.3d 566. A circuit court's factual determination on a motion for a new trial will not be reversed unless clearly erroneous. *Id*. at 4, 452 S.W.3d at 570. A showing of an abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id*. Accordingly, the party has less basis for a claim of prejudice than does one who has unsuccessfully moved for a new trial. *Id*.

3

SLIP OPINION

### III. *Discussion*

Appellants contend that the circuit court's award of a new trial was an abuse of discretion because no evidence was presented to suggest that appellee's substantial rights were materially affected. Rule 59(a) of the Arkansas Rules of Civil Procedure (2015) provides that as a prerequisite to granting a new trial, the circuit court must first determine that the stated basis for a new trial was "materially affecting the substantial rights" of the moving party. Notably, our supreme court has held as follows with regard to the granting of a new trial:

> We have stated that '[a] verdict may not be set aside arbitrarily and without reasonable cause.' Granting a new trial on the basis that a witness was generally 'nonresponsive' is arbitrary and unreasonable. It invites abuse and threatens the right of trial by jury. In practical effect it permits the trial court to substitute its view of the evidence for that of the jury.

*Suen v. Greene*, 329 Ark. 455, 463, 947 S.W.2d 791, 796 (1997). In *Suen*, the circuit court's grounds for granting a new trial were based on conduct of the appellee's counsel and because the circuit court decided it had committed error in not striking the testimony of an expert witness. *Id.* at 463–64, 947 S.W.2d at 796. With regard to the expert witness, our supreme court noted as follows:

> [W]e have not found any examples where the answers provided by Dr. Al-Mefty, or the rulings of the trial court constituted irregularities in the proceedings which prevented appellee from having a fair trial. . . . While Dr. Al-Mefty exhibited some reluctance to give answers during cross examination, the trial court guided and prodded with the result being that the appellee ultimately obtained an answer to each question.

SLIP OPINION

*Id.* at 463, 947 S.W.2d at 795. The *Suen* court went on to note that "[i]t is well established that the trial court should not substitute its view of the evidence for that of the jury." *Id.* at 464, 947 S.W.2d at 796.

Appellants claim that the facts of this case are similar to those addressed by the *Suen* court. Although the circuit court in this case had to admonish Dr. Hixson to answer the questions and stop editorializing, appellants submit that Dr. Hixson ultimately complied with that instruction, answered appellee's counsel's questions, and the cross-examination was completed without incident.

Equally as important, appellants claim that appellee has presented no evidence to suggest that Dr. Hixson's testimony actually caused any impact on the jury or clear articulation as to why the testimony negatively impacted appellee, and they maintain that there is no objective indication of either in the record. Appellants assert that the circuit court's decision to grant a new trial based on its own opinion that the testimony was "over the line," without any objective evidence that the testimony actually affected the rights of appellee, is nothing more than a circuit court substituting its view of the evidence for that of the jury, which is not a permissible basis for granting a new trial under Arkansas law.

We disagree and hold that the circuit court was within its discretion to order a new trial given the cumulative effect of allowing Dr. Hixson to testify as an expert, where he had provided a subjective opinion as to the standard of care, had insufficient knowledge of the facts concerning appellee's case, and could not state with a reasonable degree of medical certainty whether Dr. Perry had met the standard of care. Dr. Hixson then engaged in

confrontational behavior as the final witness in the trial to such an extent that it prompted the circuit court to halt the proceedings on two separate occasions.

Appellants next argue that the circuit court erred as a matter of law in granting a new trial under Arkansas Rules of Civil Procedure 59(a)(1) and 59(a)(2). Those portions of Rule 59 read as follows:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the claim on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of the court or abuse of discretion by which the party was prevented from having a fair trial; (2) misconduct of the jury or prevailing party . . . .

Ark. R. Civ. P. 59. Appellants note that our supreme court has held that a contemporaneous objection is required when a new trial is sought on the basis of accident or surprise under Rule 59(a)(3), as well as Rule 59(a)(8) of the Arkansas Rules of Civil Procedure. *See Jones v. Double "D" Properties, Inc.*, 352 Ark. 39, 98 S.W.3d 405 (2003); *Jones Rigging & Heavy Hauling, Inc. v. Parker*, 347 Ark. 628, 66 S.W.3d 599 (2002). The justification for the contemporaneous–objection requirement was articulated in *Lee v. Daniel*, 350 Ark. 466, 476–77, 91 S.W.3d 464, 470 (2002) (internal citations omitted):

> In *Selph v. State*, this court noted that the reason for requiring an objection before the trial court is to discourage 'sandbagging' on the part of lawyers who might otherwise take a chance on a favorable result, and subsequently raise a constitutional claim if the gamble did not pay off

As such, our supreme court has expressed a clear disfavor for allowing a party to withhold seeking relief in the form of a mistrial or continuance in the face of apparent grounds for new trial during the proceedings.

Appellants point out that counsel for appellee never *formally* objected to any testimony of Dr. Hixson. While acknowledging that counsel did request a break so that counsel for appellants "[could] talk to his witness," and later requested that "[s]omebody can tell this man to answer my question in order," both of which resulted in a halt in the proceedings and the jury being excused, appellants focus on the fact that there was no formal objection or specific argument or assertion by appellee's counsel that Dr. Hixson's testimony was materially affecting the substantial rights of appellee. At no point did counsel for appellee request a continuance, a mistrial, an instruction to the jury, or any other form of relief indicative of a claim that the information was grounds for a new trial or even harmful to appellee in general. Counsel for appellants was instructed to speak with Dr. Hixson as requested by counsel for appellee. Without further objection from counsel for appellee, the circuit court did sua sponte instruct Dr. Hixson to answer questions and refrain from making abrasive remarks to counsel during cross-examination. Following that instruction, the cross-examination continued to completion, and the jury ultimately found in favor of appellants without any further objection or reference to Dr. Hixson's testimony. Appellants urge that the record before us confirms that appellee's counsel received all relief requested with regard to Dr. Hixson's testimony.

Further, upon filing the motion for new trial, appellee's counsel noted, for the very first time, that, "[a]fter reflection, undersigned counsel moves the Court to grant a new trial," and for the first time contends that Dr. Hixson's "testimony and demeanor" were leading to juror reactions and constituted "irregularities and surprises that prevented a fair trial." Appellants note that none of these concerns were conveyed to the circuit court during

the proceedings. And they assert that appellee cannot argue that those concerns were even implied to the circuit court during the proceedings in light of the testimony in the record quoted above.

Procedurally, we note that in *Hopper, supra*, our supreme court held that a failure to object does not always prevent the circuit court from granting a new trial. It held that the reason an objection is typically required is to apprise the circuit court of an error, and that all that is "required" is that the error be directed to the circuit court's attention in some appropriate manner, so that the court has an opportunity to address the issue. *Id.*, 462 S.W.3d 355 In *Smith*, the circuit court's becoming aware of the error on its own was sufficient for preservation of error. Here, appellee's counsel filed a motion in limine before trial related to Dr. Hixson's testimony, and at trial, requested that the jury be excused, then requested that Dr. Perry's counsel speak with his witness in response to confrontational behavior and narrative testimony. Appellee claims, and we agree, that under *Hopper*, this was sufficient to preserve the objection.

We next address the merits of appellants' argument, whether Dr. Hixson's surprise testimony, lack of knowledge of the standard of care and the facts of the case, which were admitted over a motion in limine, combined with his prejudicial conduct, supported the circuit court granting appellee a new trial. In *Arkansas State Highway Commission v. Byars*, 221 Ark. 845, 256 S.W.2d 738 (1953), our supreme court held as follows:

> Whether there is substantial evidence to support a verdict is not a question of fact, but one of law. Because a witness testifies as to a conclusion on his part does not necessarily mean that the evidence given by him is substantial, when he has not given a satisfactory explanation of how he arrived at the conclusion.

*Id.* at 851, 256 S.W.2d at 741. The court reiterated that in order to support a verdict the evidence must be of a convincing nature, imparting qualities of reasonable certainty. *Id., 256 S.W.2d at 741. See also Hamilton v. Allen*, 100 Ark. App. 240, 267 S.W.3d 627 (2007) (holding that a physician–expert's testimony was insufficient to withstand a motion for summary judgment when his opinion regarding physician negligence was speculative). The federal district court for the Eastern District of Arkansas held in *Spurlock v. Lawson*, 881 F. Supp. 436 (E.D. Ark. 1995), that the plaintiff had a right to know what the expert's testimony would be in order to prepare for trial and acknowledged that the admission of undisclosed medical-expert testimony which introduced a new theory of liability could preclude a plaintiff from effectively addressing the charge. *See id.*

Based on previous case law, combined with Dr. Hixson's lack of knowledge of the facts, his speculative view of the required standard of care, and his behavior at trial, we hold that the circuit court did not abuse its discretion in granting appellee's motion for a new trial. Despite the assertion that appellee's filing a motion in limine to exclude Dr. Hixson for having an inadequate grasp of the governing standard of care does not count as an objection to Dr. Hixson's testimony at trial, and that at the time that testimony could have been considered helpful to appellee's case, the record indicates that the circuit court was aware of appellee's concerns, stopped the proceedings, excused the jury, and addressed the issues with Dr. Hixson on two occasions. Further, the circuit court conducted a full hearing on appellee's motion for a new trial during which both parties' arguments were duly considered. Accordingly, we hold that the circuit court did not err and affirm the grant of appellee's motion for a new trial.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Benjamin D. Jackson*, for appellants.

*Sutter & Gillham, P.L.L.C.*, by: *Luther Oneal Sutter*, for appellee.